IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **GINO BASSETT. SR.,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 24-cv-02225-SPM** |
| **C/O KULICK,**<br>**C/O HEMPEN,**<br>**LT WALKER, and**<br>**NURSE LIZ,** | |
| **Defendants.** | |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Gino Bassett, an inmate of the Illinois Department of Corrections ("IDOC"), filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights that occurred at Menard Correctional Center. The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

### THE COMPLAINT

In the Complaint, Plaintiff alleges that on September 22, 2023, he was placed in cell 417 in North 2 after allegedly breaking a clothing rack handle in cell 546. (Doc. 1, p. 3). Cell 417 was flooded with water and so Plaintiff was moved to cell 228 by Correctional Officers Kulick and Hempen. Cell 228 had a solid steel door, no running water for the sink or toilet, and no electricity. The cell contained mildew and mold, rust, flies, and other insects. Plaintiff asked Kulick and Hempen to turn on the water to his cell. The officers told him that it was not their problem and that

they had already moved him once. The officers walked away laughing. Plaintiff banged on his cell door, and Hempen returned to his cell. Hempen told Plaintiff that the only way he would be removed from the cell was if he was dying or bleeding. Plaintiff asked Kulick and Hempen if he could speak to a member of the mental health crisis team or a sergeant or lieutenant. The officers told Plaintiff to "suffer and deal with it." (*Id*.).

For the next five days, Plaintiff continued requesting to speak to a member of the mental health crisis team and to have running water restored to his cell. (Doc. 1, p. 3). Kulick and Hempen refused his requests and denied Plaintiff food, mail, medication, and medical treatment. (*Id.* at p. 4). The officers also informed staff working on other shifts not to provide Plaintiff a food tray, turn on the water to Plaintiff's cell, allow Plaintiff to speak to a crisis team member, or provide plaintiff medication or medical care. Plaintiff states that this was done in retaliation for allegedly breaking the clothing rack handle. From September 23-27, 2023, following the instructions of the escorting correctional officer, Nurse Liz did not dispense Plaintiff his medication for seizures, asthma, high blood pressure, antibiotics, anxiety, and his heart condition. Without his medications and food, Plaintiff became very ill. He vomited blood, caught an infection in his throat and scrotum, and had severe chest pain. Plaintiff states he became suicidal. He requested medical and mental health care, but his requests were denied. (*Id.*).

On September 27, 2023, Plaintiff had a disciplinary hearing before Adjustment Committee Member Lieutenant Walker. (Doc. 1, p. 5). At the hearing, Plaintiff gave Walker a letter that he had written, informing her of his unsanitary living conditions, the misconduct by staff, and the denial of medical and mental health treatment. Walker read the letter and told Plaintiff that correctional officers "wouldn't do that to inmates." Plaintiff told Walker that he was seriously ill and needed medical and mental health treatment. Plaintiff stated that he did not want to return to cell 228 with a nonfunctioning toilet and without running water. Walker asked Kulick if Plaintiff's

statements were true, and Kulick responded, "he got what he deserved." Walker told Plaintiff, "This isn't my problem I just hear tickets." Walker refused to refer Plaintiff for mental health or medical treatment and ordered for Plaintiff to be returned to cell 228. (*Id.*). On his way back to his cell, Plaintiff saw Wilks, a mental health professional. He told Wilks that he was suicidal and would kill himself he was placed back in cell 228. Wilks placed Plaintiff on suicide watch in cell 516. Wilks informed the nurses' station about Plaintiff's medical issues, but a nurse never came to examine him. (*Id.*).

On October 2 and 3, 2023, Wilks and another mental health professional named Bayer contacted the healthcare unit about Plaintiff's serious medical issues. (Doc. 1, p. 5). The mental health department and Sergeant Jones instructed for Plaintiff to be taken to "urgent care." Hempen was Plaintiff's escorting officer and stated that Plaintiff was not sick and just wanted attention. Hempen took Plaintiff back to cell 516, the suicide crisis cell. Hempen stated that he did not care how sick Plaintiff became, Plaintiff could die "for all he care[d]." (*Id.*). After placing Plaintiff back in the crisis cell, Hempen refused to give Plaintiff soap and boxers that Wilks had left at the desk for Plaintiff. (*Id.* at p. 6).

Two days later, while Hempen was not working, Plaintiff complained to Correctional Officer Krendo that he was sick and needed to go to urgent care. (Doc. 1, p. 6). Krendo took Plaintiff to urgent care. Nurse Practitioner Dearmond, however, would not examine Plaintiff because Plaintiff had filed a grievance complaining that Dearmond was denying him medical care. Plaintiff was taken back to his cell, still ill and experiencing vomiting and blood in his urine, unable to eat or sleep, and with an infection in his throat and scrotum, which were swollen. Plaintiff continued to inform Hempen that he needed medical attention. (*Id.*).

On October 10, 2023, Plaintiff was taken to see Nurse Practitioner Moldenhauer. (Doc. 1, p. 6). Moldenhauer found that Plaintiff was seriously ill and arranged for Plaintiff to be taken to

the emergency room at St. Louis University Hospital. Plaintiff remained at the hospital for five days. The staff at the hospital told Plaintiff his condition was life threatening, and they did not know how he survived this long without medical care. (*Id.*). During his time at the hospital, Plaintiff was on crisis watch. (*Id.* at p. 7).

Several months later, on May 25, 2024, while housed in East House, Plaintiff was taken to the "bull pen" area, while Hempen, who had become an intel officer at this point, searched his cell. (Doc. 1, p. 8). Benadryl was found in Plaintiff's cell, and Plaintiff was issued a disciplinary ticket for the possession of dangerous contraband. Plaintiff states that Hempen wrote the false disciplinary ticket in retaliation for filing a grievance and previously breaking the clothing rack handle back in September 2023. The disciplinary hearing was held again before Lieutenant Walker. Plaintiff told Walker that he was not guilty, and that Hempen was retaliating against him. He also stated that the healthcare unit would have documents showing that the Benadryl was for his allergies, and that, pursuant to his prescription, he is allowed to have a 30-pill pack in his cell. Walker told Plaintiff that she was tired of him accusing correctional officers of unprofessional misconduct and that she would teach him a lesson for lying about staff. Plaintiff threatened Walker with filing a lawsuit, and Walker told Plaintiff that if he filed a lawsuit, she would make sure that he was not released from segregation for a long time. Walker found Plaintiff guilty of three charges and sentenced him to one year in segregation and three months of C-grade status. Plaintiff states that Hempen stopped his $100 money voucher to his family. (*Id.*).

### DISCUSSION

Based on Plaintiff's allegations and his articulation of his claims, the Court designates the following counts:

**Count 1:**    Eighth Amendment claim against Kulick, Hempen, and Walker for subjecting Plaintiff to unconstitutional conditions of confinement from September 22, 2023, through September 27, 2023.

| | |
|---|---|
| **Count 2:** | Eighth Amendment claim against Kulick, Hempen, Walker, and Nurse Liz for denying Plaintiff medical care. |
| **Count 3:** | Eighth Amendment claim against Kulick, Hempen, and Walker for denying Plaintiff mental health care. |
| **Count 4:** | First Amendment claim against Nurse Liz, Kulick, Hempen, and Walker for retaliating against Plaintiff. |
| **Count 5:** | Fourteenth Amendment claim against Hempen and Walker for denial of due process in connection with the issuance of a false disciplinary ticket on May 25, 2024, and the subsequent disciplinary hearing. |

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[1] pleading standard.**

## Count 1

Plaintiff has stated sufficient facts to support an Eighth Amendment claim against Kulick and Hempen for subjecting Plaintiff to unconstitutional conditions of confinement from September 22-27, 2023.

Count 1, however, will be dismissed as to Walker. Plaintiff pleads that on September 27, 2023, he told Walker about the conditions of cell 228, and that he was being denied food and running water. Knowing about the unsafe conditions, Walker still instructed for Plaintiff to be taken back to cell 228 following the disciplinary hearing. (Doc. 1, p. 5). Plaintiff, however, did not return to cell 228. Before reaching his cell, Mental Health Professional Wilks ordered for Plaintiff to have a "psych evaluation," and he was taken to a suicide watch cell instead. Thus, Walker cannot

---

[1] *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). This includes dismissal of any claims Plaintiff is intending to bring against individuals who are named in the statement of claim but not identified as defendants in the case caption. The Court will not treat parties not listed in the caption as defendants. *See Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005).

be held liable for the conditions that Plaintiff experienced in cell 228, before his interaction with Walker.

### Counts 2 and 3

Count 2 will proceed against Kulick, Hempen, Walker, and Nurse Liz as pled for denying Plaintiff medical care. Likewise, Count 3 will proceed against Kulick, Hempen, and Walker for denying Plaintiff mental health treatment.

### Count 4

Prison officials are prohibited from retaliating against inmates for exercising their First Amendment rights by filing lawsuits about their conditions of confinement. *See Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020). A plaintiff asserting a retaliation claim must allege that: (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter future First Amendment activity; and (3) his protected activity was "at least a motivating factor" in the defendant's decision to take retaliatory action against him. *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (citing *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)).

Plaintiff claims that Nurse Liz "showed revenge and retaliation" in denying him his medication from September 23-27, 2023. (Doc. 1, p. 4). According to the Complaint, however, Plaintiff did not write grievances about Nurse Liz's conduct until after she had already denied him medication. Thus, he has not alleged any facts from which the Court can infer that Nurse Liz was motivated by a First Amendment activity in withholding medicine. Count 4 is dismissed against Nurse Liz.

Likewise, Plaintiff states that the conditions he experienced in cell 228 was a result of "revenge and retaliation and unprofessional misconduct" by all correctional officers, nurse, and Lieutenant Walker. (Doc. 1, p. 4, 7). Breaking or defacing prison property is not protected by the First Amendment. Thus, Defendants cannot be held liable under the First Amendment for

retaliating against Plaintiff because he broke a clothing rack handle. (*Id.* at p. 3-4).

Count 4 will proceed against Hempen for writing Plaintiff a false disciplinary ticket on May 25, 2024, because Plaintiff wrote grievances. (Doc. 1, p. 8). Count 4 will also proceed against Walker for finding Plaintiff guilty of the disciplinary ticket because Plaintiff complained about staff misconduct and wrote grievances. (*Id.*). Count 4 is dismissed against Kulick.

### Count 5

Plaintiff claims that he was written a disciplinary ticket and sentenced to a year in segregation for possessing Benadryl, which he was allowed to have in his possession. He states that the conduct of Hempen and Walker was motivated by his complaints regarding staff conduct and his conditions of confinement. These claims sufficiently state a due process claim and Count 5 will proceed against Hempen and Walker. *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974).

### MOTION FOR RECRUITMENT OF COUNSEL

Plaintiff has filed a Motion for Recruitment of Counsel (Doc. 3), which is **DENIED.**[2] Plaintiff discloses five unsuccessful efforts to contact attorneys via written correspondence. Accordingly, he appears to have made reasonable efforts to retain counsel on his own. With respect to his ability to pursue this action pro se, Plaintiff indicates that he is unable to represent himself in this matter as he has mental and physical disabilities that impacts his daily routines. Due to these various conditions, he is on heavy doses of psych medications and "medical" medications. Nonetheless, the Court finds that Plaintiff can proceed pro se, at least for now. Plaintiff's pleadings and motions demonstrate an ability to construct coherent sentences and relay information to the Court. Plaintiff appears competent to try this matter without representation at this early stage in the case. Once discovery on the merits has commenced, if Plaintiff has significant difficulty, he

---

[2] In evaluating Plaintiff's Motion for Recruitment of Counsel, the Court applies the factors discussed in *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) and related authority.

may refile his motion.

## MOTION FOR AMENDED/SUPPLEMENTAL COMPLAINT

Plaintiff has filed a motion asking to for leave to amend the Complaint in order to add Warden Anthony Wills as a defendant. (Doc. 8). The motion is **DENIED**. First, the Court does not accept piecemeal amendments or supplements to a complaint or amended complaint. An amended complaint must stand on its own and contain all claims against all defendants, without any references to other filings.

Second, even if the Court allowed Plaintiff to supplement the Complaint, his new allegations against Warden Wills are not sufficient to state a claim. As of December 15, 2023, Plaintiff was litigating two civil cases in the United States District Court for the Northern District of Illinois. In those cases, on December 12, 2023, Plaintiff filed letters detailing the allegations of denial of medical and mental health care at Menard, including some of the allegations he is asserting in *this* case. (Doc. 8, p. 4). Although any relief requested was outside the parameters of the cases, the Northern District Court directed for the clerk of court for the Northern District to send a copy of the order and Plaintiff's letters to Warden Anthony Wills so that he would be aware of the issues raised by Plaintiff. Plaintiff states that because of these letters, Wills was aware that he was being denied medical and mental health treatment.

Because this case pertains to unconstitutional conditions of confinement and denial of medical and mental health care that occurred in September and October 2023, Plaintiff's assertion that Wills became aware of his mistreatment via letters sent several weeks later in December 2023 does not state a claim for deliberate indifference.

## SUBPOENA MOTION TO PRODUCE DOCUMENTS

Plaintiff's motion requesting subpoenas is **DENIED**. (Doc. 13). Defendants have not been served, and a discovery schedule has not been entered. Therefore, Plaintiff's motion is premature.

When all of the defendants have filed Answers, the Court will enter a scheduling order containing important information on deadlines, discovery, and procedures.

### DISPOSITION

For the reasons stated above, the Complaint survives preliminary review pursuant to Section 1915A. **COUNT 1** shall proceed against Kulick and Hempen and is **DISMISSED without prejudice** as to Walker. **COUNT 2** will proceed against Kulick, Hempen, Walker, and Nurse Liz. **COUNT 3** shall proceed against Kulick, Hempen, and Walker. **COUNT 4** shall proceed against Hempen and Walker and is **DISMISSED** as to Nurse Liz and Kulick. **COUNT 5** shall proceed against Hempen and Walker.

The Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The Clerk of Court **SHALL** prepare for Kulick, Hempen, Walker, and Nurse Liz the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the defendant, and the Court will require the defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, the Defendants need only to respond to the issues stated in this Merit Review Order.**

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: January 15, 2025.**

_s/Stephen P. McGlynn_
**STEPHEN P. MCGLYNN**
**United States District Judge**

**NOTICE TO PLAINTIFF**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.